Calhoun vs. Tullass.

---

JAMES M. CALHOUN, and others, plaintiffs in error, vs. JAMES A. TULLASS, and others, defendants in error.

[1.] One who purchases land subject to judgment liens, and contracts to pay off the judgments, will not be aided by equity to prevent the collection of such judgments out of the land, if he fails to pay them off in conformity with his contract.

[2.] The purchaser of notes secured by mortgage may foreclose the mortgage at law by using the name of the mortgagee for his use, even against the consent of the mortgagee, by giving proper indemnity.

In Equity. In Catoosa Superior Court. Demurrer. Decided by Judge MILNER. November Term, 1866.

This was a bill filed by Tullass and others, vendees of a certain settlement of land situate in Catoosa county, against

Nichols, of the State of Florida, their vendor ; Calhoun, of the county of Fulton, a judgment creditor of Nichols ; Paris, of the county of Dade, another judgment creditor of Nichols; and X. G., T. G. and C. D. McFarland, of the county of Walker, mortgagees of the same land, under said Nichols.

The case made by the bill was, in substance, as follows : On the tenth day of July, 1863, the complainants purchased said land from Nichols (who then resided in Catoosa county) at the price of $35,000 00 in Treasury notes of the Confederate States, and Nichols executed to them his deed of conveyance with warranty of title. Nichols was then indebted to a large amount. There were many judgments and executions against him, as well as several mortgages on the land. It was a part of the contract that the vendees should proceed to take up the mortgages, judgments, executions and debts against Nichols, binding upon the land, to the amount of $35,000 00, if there should be so much; and if not, the remainder of the purchase money was to be paid to Nichols. But as it was unknown whether said debts were more or less than the purchase money, or whether the vendees, after paying the latter in full, would have a good and unincumbered title to the land, it was distinctly understood and agreed by and between the vendees, the vendor, and the mortgagees, that the vendees should take up the mortgages and executions, and hold the mortgages open as their property to save themselves from loss in the event it became necessary for their protection—that the money received by the mortgagees was not in payment of the mortgages, nor so to be, unless the vendees received a good and unincumbered title to the land.

The vendees went on and paid out to and for the vendor, in the aggregate, $34,773 55 ; of which $6,863 00 was paid to the vendor himself, under the belief that enough of the purchase money remained to take up all the liens on the land ; and under a like belief notes against him were taken up to the amount of $4,349 96. The executions taken up

amounted to $1,515 95, and the mortgages to $15,707 91. The mortgages, without being entered, satisfied or marked paid, were delivered over to the vendees, and are still held by them; the understanding with the mortgagees at the time the latter received the money upon them being that said mortgages were to remain open in the hands of the vendees as their property, and for their protection in the event it became necessary. The mortgagees would then have executed to the said vendees a written assignment or transfer of the mortgages, but by mistake it was omitted, and they now decline to do so.

The vendees placed in the hands of an agent $1,771 37, to take up two executions and a note against the vendor, one of the executions being that in favor of Paris, one of the defendants in the bill, which money the parties refused to receive, and it was lost.

Ten executions against the vendor, older than the mortgages, have been levied upon one of the lots of land embraced in the purchase, worth to the settlement $1,500 00, and it has been sold under the levy, and is a total loss to the vendees. There are yet outstanding executions older than the mortgages to the amount of $3,500 00, which will have to be paid out of the land, as the vendor has no other property subject to them. The land is not worth more in currency than $10,000 00—less than enough to pay the mortgages—and, after paying the older executions, will not sell for half enough to satisfy them.

Calhoun's execution is for over $4,000 00. Paris' is for $1,500 00, or near that amount. Both of them are younger than the mortgages, but older than the purchase of the land by complainants. They have both been levied on the land, and complainants have interposed claims which are now pending in Catoosa Superior Court.

Complainants allege that they cannot foreclose the mortgages at law, because they have not been assigned or transferred. Also, that, under existing circumstances, there being mortgages and older and younger judgments, with the right

of the complainants to have the mortgages foreclosed unsettled, the rights of the several parties claiming the proceeds of a sale of the land uncertain, and the complainants, therefore, unable to determine how or whether to bid at all for the land. Persons interested in causing it to bring as much as possible would, at any sale of the same under these younger executions, be embarrassed, if not deterred from bidding, so that the land would not sell for its full value, and the said Nichols and his creditors would almost necessarily be injured.

The bill prayed :

1. For a foreclosure of the mortgages and for a cancellation of the deed from Nichols to the complainants ; or, that the deed stand, and that the land be sold free from doubts, clouds, and suspicion as to the title, and the proceeds distributed to the mortgagees and judgments according to law.

2. For an assignment of the mortgages by the mortgagees, or for foreclosure without such assignment.

3. For an injunction restraining Calhoun and Paris from selling the land under their executions, and from pressing the claim cases to a trial.

4. For general relief.

Discovery from the defendants, or any of them, was expressly waived.

The defendants demurred to the bill on various grounds :

1. For multifariousness.

2. For the improper joinder of Calhoun and Paris as defendants to the bill.

3. For want of equity.

4. For want of equity as to Calhoun and Paris; and because the subject matter of the bill, as to them, was already before a Court of law, and the remedy at law complete.

5. For want of jurisdiction, as to Calhoun and Paris.

The Court overruled the demurrer, and that is the error complained of.

CALHOUN and BROWN, for plaintiffs in error.

AKIN, for defendant.

WALKER, J.

[1.] Complainants contracted to take up the liens which were upon the land of Nichols, provided said liens should not exceed $35,000; and, in consideration of such obligation, received a warranty deed to a valuable settlement of land. In compliance with their contract, they paid some $18,000, or perhaps $19,000, leaving some $9,000 still, to which said land is subject. They now ask a Court of Equity to enjoin the persons holding these outstanding liens from proceeding to enforce them. In other words, complainants take a deed to the land, pay nothing to the owner, but obligate themselves to pay *these creditors*, fail to do so, and ask that the creditors be restrained from making their money out of the land—the very money complainants *promised to pay*, in consideration of a conveyance of the land to them To state the case is to decide it, it seems to me. Complainants failed to comply with their contract, and asked to be relieved from the consequences of such failure; this is the whole case. It is needless to say a Court of Equity will do no such thing.

[2.] But the complainants say they have mortgages purchased from the Messrs. McFarland which were not assigned to them, and that it is necessary to go into Equity to foreclose them, because the mortgagees refuse the use of their names. Without expressing any opinion as to the effect of the *complainants* foreclosing mortgages against *their own land*, and to which, when they comply with their contract, they will have a clear and *unincumbered* title, we will say they have a right to use the names of the mortgagees for their use in a proceeding to foreclose. If the mortgagees object to such use of their names, the complainants may indemnify them against costs, &c., and use their names, even

against their consent, in favor of the ends of justice, as has frequently been done in actions of ejectment. *Fain vs. Garthright,* 5 *Ga. Rep.* 6. *English vs. Register,* 7 *Ga. R.* 387. There being no equity in this bill, the Court erred in overruling the demurrer.

Judgment reversed.